UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENGAGE LEARNING, INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>DAVIS TEXTBOOKS, ALI SHERALI, and SHAHNAWAZ SHERALI,<br><br>        Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR:**<br><br>1. **COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*)**<br>2. **TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**<br>3. **TRADEMARK COUNTERFEITING (15 U.S.C. § 1114)**<br>4. **BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Cengage Learning, Inc., ("Cengage"), for its Complaint against Defendant Davis Textbooks, Ali Sherali, and Shahnawaz Sherali a/k/a Shawn Sherali and Sean Sherali (collectively, "Defendants"), alleges, on personal knowledge as to matters relating to itself and on information and belief as to all other matters, as follows:

**INTRODUCTION**

1. Cengage is one of the world's leading educational publishers. It provides a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.

2. Defendants are long-time sellers of college textbooks. They own and operate a brick and mortar college bookstore, Davis Textbooks, a family business that caters to students at the University of California, Davis. Defendants also sell textbooks online to students as well as to other distributors, including through a storefront on Amazon.com called "lo_cost."

3. In 2011, Cengage, along with three other major textbook publishers caught

Defendants selling counterfeit copies of their copyrighted textbooks. The parties settled their claims in 2012 pursuant to a written agreement (the "Settlement Agreement"). As part of that Settlement Agreement, Defendants agreed, among other things, not to sell counterfeit books, and to cooperate with the textbook publishers in their future counterfeiting investigations.

4. Notwithstanding their promises, however, Defendants continued to sell counterfeit textbooks. Moreover, when Cengage became aware of the infringement and sought information from Defendants to investigate the scope of such infringement, Defendants refused to cooperate with Cengage's investigation.

5. Cengage brings this Complaint for damages and injunctive relief to bring an end to and to seek redress for Defendants' recidivist infringement of Cengage's intellectual property rights, as well as for breach of the Settlement Agreement.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the subject matter of this action based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121, and based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7. This is an action arising under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and the Lanham Act, 15 U.S.C. § 1051, *et seq.*

8. Jurisdiction in this district is proper because Defendants, without the consent or permission of Cengage, caused the distribution of unauthorized copies of Cengage's copyrighted works bearing Cengage's trademarks, for which Cengage has the exclusive rights. Such unlawful conduct occurred in this jurisdiction, as Defendants have made sales into this District.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(a).

## PARTIES

10. Cengage Learning, Inc., formerly Thomson Learning Inc., ("Cengage") is a Delaware corporation with its principal place of business at 20 Channel Center Street, Boston, Massachusetts 02210.

11. Defendant Davis Textbooks is a California company with its principal place of business at 236 A Street, Davis, California 95616. It is a sole proprietorship owned by Shahnawaz Sherali.

12. Defendant Shahnawaz Sherali, a/k/a Shawn Sherali and Sean Sherali, is an individual residing at 1629 Arena Drive, Davis, California 95618 and is the owner and president of Davis Textbooks.

13. Defendant Ali Sherali is an individual residing at 2004 Vizcaya Walk, Sacramento, California 95818. Defendant Ali Sherali buys and sells books on behalf of Davis Textbooks and is the son of Defendant Shahnawaz Sherali.

## GENERAL ALLEGATIONS

14. Cengage is among the world's largest providers of tailored learning solutions. In the academic marketplace, Cengage serves secondary, post-secondary, and graduate-level students, teachers, and learning institutions in both traditional and distance learning environments. Cengage products and services are sold throughout the world, through direct channels and via a worldwide network of distributors. Cengage invests significant resources annually in the worldwide advertisement and promotion of its goods and services under all its marks.

15. Cengage's publications are widely available in the marketplace, including in retail and online bookstores, for schools, students, and other consumers.

16. Cengage uses its alliances, affiliations, and relationships with wholesalers and distributors as part of their respective overall sales, marketing, and distribution efforts, expanding Cengage's geographic reach to actual and potential customers and allowing Cengage to operate across various media and formats.

17. Cengage invests heavily in textbook publishing. Each year it incurs substantial costs for author royalties or other costs of content creation or licensing, for copyediting and proofreading, for typesetting, layout, printing, binding, distribution, and promotion, and for support of its editorial offices.

18. Both publishers and authors alike are deprived of income when their books are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

19. The revenue from Cengage's sales of textbooks represents a substantial amount (and in some cases a majority) of Cengage's annual revenues and is therefore important to its financial health.

20. Cengage suffers serious financial injury when its copyrights and trademarks are infringed. A substantial decline in revenue from textbook sales could cause Cengage to cease publication of one or more deserving books. This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific progress by making it more difficult to publish deserving works.

**CENGAGE'S FEDERALLY REGISTERED COPYRIGHT AND TRADEMARKS**

    A. **Cengage's Copyright Registration**

    21.    Cengage has duly registered its copyright in the work described below, among others (hereinafter, "Cengage's Authentic Work"):

| ISBN | Title | Author | Copyright Registration |
|---|---|---|---|
| 978-0840028549 | Theory and Practice of Counseling and Psychotherapy, 9th | Corey | TX 7-476-713 |

    B.    **Cengage's Trademark Registrations**

    22.    Cengage's Authentic Work bears trademarks and service marks as set forth below (hereinafter, "Cengage's Marks"). Cengage's Marks are distinctive and arbitrary and are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. Cengage and/or its predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Cengage's Marks.

| Mark | Trademark Registration No. |
|---|---|
| Brooks/Cole | 3,386,242 |
| Cengage | 3,603,349 |
| Cengage Learning | 3,603,376 |

**COUNTERFEIT COPIES OF CENGAGE'S PUBLICATIONS**

    23.    Defendants sell college textbooks to wholesale distributors, as well as to individuals. They sell textbooks from their physical bookstore, as well as over the Internet. Defendants operate under the names Davis Textbooks and lo_cost, and they each individually engage in the business of buying and selling textbooks including counterfeit textbooks.

24. Defendant Shahnawaz Sherali is the sole proprietor of Davis Textbooks. He directly and exclusively oversees and manages the day-to-day business of Davis Textbooks, including, in particular, the infringing and illegal activity described herein. Among other things, he directs the purchase and sale of college textbooks, including Cengage's Authentic Work. Shahnawaz Sherali is a direct beneficiary of any sales by Davis Textbooks.

25. Davis Textbooks employs Ali Sherali to assist in the acquisition and sale of textbooks on its behalf. Ali Sherali also operates a number of textbook related business ventures. He is well acquainted with the textbook distribution business.

26. In order to maximize their profit, Defendants source their textbook inventory from the lowest possible prices at which they can find them and then sell them to distributors and consumers without any regard to the legitimacy of the inventory they are acquiring. Defendants often buy textbooks from unknown sources at below market prices. Frequently, these sources are sellers who hide behind the anonymity of the Internet. Defendants purchase these counterfeit textbooks, which they then sell to others as legitimate textbooks.

27. Defendants know or should know that the textbooks they are selling are counterfeit. Defendants were put on notice in January 2011 by one of their online customers that several of the books they were selling were counterfeit. Defendants ignored the notice, and continued business as usual. Thereafter, Cengage, as well as other textbook publishers, Pearson Education, Inc., The McGraw-Hill Companies, Inc., and John Wiley & Sons, Inc. (hereinafter, the "Textbook Publishers"), caught Defendants continuing to sell counterfeit books.

28. In July 2011, the Textbook Publishers sent Defendant Davis Textbooks a letter asserting claims for copyright and trademark infringement. In order to identify the scope and

6

quantity of Davis Textbooks' counterfeit inventory, the Textbook Publishers inspected a portion of Defendants' inventory in September 2011. That inspection revealed thousands of copies of counterfeit books.

29. In March 2012, the Textbook Publishers, entered into the Settlement Agreement with Defendants Davis Textbooks and Shahnawaz Sherali, with Ali Sherali and Habiba Sherali as additional signatories.

30. As part of that Settlement Agreement, Defendants agreed not to infringe the Textbook Publishers' textbooks again and to cooperate with the Textbook Publishers in any future investigations. In addition, Defendants agreed that they would implement anti-infringement policies pursuant to guidelines provided by the Textbook Publishers.

31. Notwithstanding those agreements, beginning at least as early as October 2014 and continuing to the present, Defendants have distributed counterfeit copies of Cengage's Authentic Work bearing Cengage's Marks (hereinafter "Pirated Books").

32. On June 16, 2015, Defendant Ali Sherali contacted Cengage regarding the sale of Pirated Books by Davis Textbooks and Shahnawaz Sherali to a distributor in Illinois by the name of Follett Corporation ("Follett"). Ali Sherali explained to Cengage that he was trying to pursue refunds from the Amazon sellers from whom he had purchased the Pirated Books. To that end, he sought documentation from Cengage to support his refund requests.

33. Cengage requested information from Defendants in order to investigate and remedy the infringement. Ali Sherali identified three Amazon sellers as the sources of the Pirated Books. All three sellers are known counterfeit suppliers, and two of them are Doe Defendants in another litigation brought by Cengage and two other textbook publishers which is currently pending in the United States District Court for the District of Massachusetts. Ali

Sherali identified two titles by other textbook publishers which he purchased from these same Amazon sellers. While the publishers have not yet had the opportunity to inspect those books, they are likely counterfeit.

34. Defendants provided some very limited information in response to Cengage's requests for information; however, Defendants refused to provide additional information that Cengage needed to investigate the extent of the infringement. Despite repeated requests to Defendants' counsel for information, Plaintiff's counsel received a run around.

35. Notwithstanding Defendants' failure to provide the requested information, it is clear that Defendants ordered and purchased these Pirated Books. In so doing, Defendants deliberately evaded legitimate sources of the products in question and chose instead to obtain illegal and counterfeit copies of Cengage's products for the purpose of illegally distributing and reselling such copies to consumers in the United States, including in Illinois, in violation of Cengage's intellectual property rights and the Settlement Agreement.

36. Defendants paid materially less than they would have had they purchased the books directly from Cengage or from a legitimate wholesaler.

37. At the time that Defendants purchased the Pirated Books, Defendants knew or should have known that the Pirated Books were infringing.

38. After receiving the Pirated Books, Defendants sold the Pirated Books as though they were legitimate to Follett in Illinois. Defendants sold the Pirated Books, knowing that Follett intended to redistribute them.

39. Defendants knowingly supervised and controlled the distribution of the Pirated Books, and had a direct financial interest in, and stood to gain a direct financial benefit from, their deliberately infringing activity.

40. Defendants did more than supply the means to facilitate the infringement of Cengage's intellectual property rights. They also substantially participated in, and orchestrated, such infringing activities.

41. Defendants directed and controlled the infringing activities alleged in this Complaint and were and are in a position to benefit economically from the infringement of Cengage's intellectual property rights, which they orchestrated.

42. The Pirated Books are inferior to Cengage's Authentic Work. Among other differences, the binding, glue, paper, color, and printing are often different and inferior. Based on the use of Cengage's Marks, actual and prospective purchasers are likely to believe that the Pirated Books are Cengage's authentic publications. Because the Pirated Books are inferior, this weakens, blurs, and tarnishes Cengage's Marks. It further injures Cengage's business reputation by causing its trademarks and the goodwill associated with them to be confused or mistakenly associated with a group or series of textbooks of lesser quality, as alleged above.

43. Defendants have a history of engaging in infringing activities, including but not limited to their sale of thousands of copies of counterfeit textbooks in 2011. Defendants are very familiar with the legal issues associated with the sale of counterfeit products. In addition to being caught distributing counterfeit textbooks by publishers, Defendant Shahnawaz Sherali has been sued for the illegal distribution of counterfeit tobacco products as well.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement Under 17 U.S.C. § 101, *et seq.*

44. Cengage hereby restates and incorporates by reference all allegations contained in paragraphs 1-43 above as though fully set forth herein.

45. Cengage's Authentic Work constitutes original work and copyrightable subject

9

matter pursuant to the Copyright Act, and it has been duly registered by Cengage with the United States Copyright Office and published by Cengage in strict conformity with the Copyright Act and all laws governing copyrights.

46. At all relevant times, Cengage has been and still is the owner of all rights, title, and interest in and to its respective copyright in Cengage's Authentic Work, which have never been assigned, licensed, or otherwise transferred to Defendants.

47. Beginning on an unknown date but at least since October 2014 and continuing to the present, Defendants, with knowledge of Cengage's duly registered copyright in the Authentic Work, infringed Cengage's copyright by, among other things, deliberately purchasing, distributing, and reselling the Pirated Books for profit, without Cengage's permission, license, or consent.

48. As a result of Defendants' unlawful and deliberate conduct as set forth above, Cengage has been, and will continue to be, damaged.

49. Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.

50. Defendants' actions described above have caused, and will continue to cause, irreparable damage to Cengage, for which Cengage has no remedy at law. Unless Defendants are restrained by this Court from continuing their infringement of Cengage's copyrights, these injuries will continue to occur in the future. Cengage is accordingly entitled to injunctive relief restraining Defendants from further infringement.

## SECOND CLAIM FOR RELIEF

### Infringement of Federally-Registered Trademarks Under 15 U.S.C. § 1114

51. Cengage hereby restates and incorporates by reference all allegations contained

in paragraphs 1-50 above as though fully set forth herein.

52. Cengage owns Cengage's Marks, which are valid and subsisting and duly registered with the U.S. Patent and Trademark Office. The registrations for Cengage's Marks are incontestable within the meaning of 15 U.S.C. § 1065.

53. Without Cengage's authorization, Defendants are marketing, offering for sale, and selling in commerce textbooks under Cengage's Marks.

54. Defendants' aforesaid uses of Cengage's Marks have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Defendants' goods, in that the public, and others, are likely to believe that Defendants' goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Cengage, all to Cengage's irreparable harm.

55. Cengage is informed and believes, and on that basis alleges, that Defendants will continue to use Cengage's Marks unless enjoined.

56. Defendants, by their above-enumerated acts, willfully and knowingly have violated and infringed Cengage's rights in and to the federally registered Marks, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Defendants threaten to further violate and infringe Cengage's said rights.

57. Cengage is entitled to an order restraining and permanently enjoining Defendants from further use of Cengage's Marks under 15 U.S.C. § 1116(a).

58. Defendants' aforesaid conduct was intentional, or deliberately reckless, and without foundation in law.

59. As a result of Defendants' unlawful and deliberate conduct as set forth above, Cengage has been, and will continue to be, damaged.

## THIRD CLAIM FOR RELIEF

### Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)

60. Cengage hereby restates and incorporates by reference all allegations contained in paragraphs 1-59 above as though fully set forth herein.

61. Defendants are infringing Cengage's federally registered Marks through their use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Cengage's Marks, in connection with the sale, offering for sale, marketing, distributing, or advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to deceive the public.

62. Defendants are intentionally using Cengage's Marks on unauthorized product. Defendants are intentionally infringing upon Cengage's trademark rights in order to further their own business enterprises.

63. Defendants' counterfeiting of Cengage's Marks has caused, and will continue to cause, serious and irreparable injury to Cengage's reputation and goodwill for which Cengage has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract

64. Cengage hereby restates and incorporates by reference all allegations of paragraphs 1-63 above as though fully set forth herein.

65. The Settlement Agreement prohibits Defendants from distributing infringing copies of Cengage's textbooks.

66. The Settlement Agreement also requires Defendants to cooperate with Cengage's efforts to investigate infringement by third parties.

67. Defendants have breached both the No Infringement and Cooperation provisions of the Settlement Agreement.

68. Cengage has adequately and substantially performed all material obligations under the Settlement Agreement.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Cengage seeks relief from this Court as follows:

1. Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

2. An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Pirated Books with documents relating to all of the purchases and sales;

3. An order requiring Defendants to pay to Cengage such damages as Cengage has sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Cengage's election, pursuant to 17 U.S.C. § 504;

4. An order enjoining Defendants from further infringing upon Cengage's respective copyrights, pursuant to 17 U.S.C. § 502;

5. An order requiring Defendants to pay Cengage such damages as have been sustained as a consequence of Defendants' unlawful acts as alleged above, including statutory damages or treble damages, as well as Defendants' profits, pursuant to 15 U.S.C. § 1117;

6. An order requiring Defendants to deliver up for destruction all products, packaging, labels, literature, advertising, and other material bearing imitations or reproductions, including confusingly similar variations of, Cengage's respective copyrights and marks pursuant

to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

7. That Defendants be required to pay actual damages for their breach of contract;

8. An order enjoining Defendants from further infringing Cengage's respective trademarks pursuant to 15 U.S.C. § 1116;

9. Prejudgment interest at the applicable rate;

10. Punitive damages;

11. Attorneys' fees and costs of suit; and

12. Such other and further relief the Court deems proper.

## JURY DEMAND

Cengage hereby demands a trial by jury on all issues as to which trial by jury is allowed.

DATED: September 15, 2015

Respectfully submitted,

By: /s/ *Matthew J. Oppenheim*
Matthew J. Oppenheim
Julie C. Chen (6224655)
Oppenheim + Zebrak, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
(202) 480-2999 Telephone
(866) 766-1678 Facsimile
matt@oandzlaw.com
julie@oandzlaw.com

Floyd A. Mandell (1747681)
Jeffrey A .Wakolbinger (6297872)
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
(312) 902-5200 Telephone
(312) 901-1061 Facsimile
floyd.mandell@kattenlaw.com
jeff.wakolbinger@kattenlaw.com

*Counsel for Plaintiff Cengage Learning, Inc.*